**Bonnie C. WICKHAM, Respondent,**

v.

**Terry D. WICKHAM, Appellant.**

**No. WD 39712.**

Missouri Court of Appeals,
Western District.

April 5, 1988.

Rehearing Denied May 31, 1988.

Ronald S. Reed, Jr., St. Joseph, for appellant.

Michael Paul Harris, St. Joseph, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and NUGENT, JJ.

LOWENSTEIN, Judge.

This appeal arises from a declaratory judgment action which construed a property settlement agreement entered into by the parties at the time of the dissolution of their marriage. Respondent Bonnie C. Wickham brought this suit seeking additional maintenance payments pursuant to certain terms of the agreement. The appellant husband counterclaimed. The trial court found in her favor. The cause is reversed.

The facts are basically as follows: at the time of the separation agreement and dissolution the wife worked for the husband's company making a minimum salary of approximately $1,000 per month. She had health problems, particularly with her back. Some three years later the wife's employment at the husband's company was terminated due to change in the business. She was off work for 10 months due to health problems which were not related to her back. It is for this period she seeks additional maintenance under the agreement. She obtained part-time jobs which do not net her $1,000 a month. Her back problems have not been the cause of unemployment or the reason for her jobs, or that her earnings are less than $1,000 a month.

The maintenance provisions of the agreement first set out the husband's obligation to pay his ex-wife six hundred dollars a month until she dies or remarries. The husband's obligation is stated to be reduced by the ex-wife's entitlement to Social Security Retirement or Disability payments. The section following the above is the provision specifically at issue and reads as follows:

B. The WIFE is presently employed as a sales person by Wickham–Wristen, Inc. Should the WIFE for any reason whatsoever cease to be employed by Wickham–Wristen, Inc., then in such event, the WIFE agrees to procure other full-time employment commensurate with her ability and experience. If by reason of the condition of her back, she is unable to perform full-time employment, she agrees to procure part-time employment commensurate with her ability and experience, "part-time employment" for this purpose is defined to be 20 hours a week, then upon the WIFE procuring such employment, full-time or part-time as the case may be, and during the time she is so employed, the HUSBAND agrees to pay in addition to the SIX HUNDRED DOLLARS ($600.00) per month and as additional maintenance the difference, if any, between the WIFE's monthly gross salary from such other employment and the sum of ONE THOUSAND DOLLARS ($1,000.00) per month, but in no event shall such additional payments exceed the sum of FIVE HUNDRED DOLLARS ($500.00) per month.

If by reason of the condition of her back, the WIFE is unable to work, then in such event and during such period of time, the HUSBAND agrees to pay the WIFE as additional maintenance the sum of TWO HUNDRED FIFTY DOLLARS ($250.00) per month, it being understood and agreed that in this event, the WIFE will obtain full-time or part-time employment commensurate with her ability and experience as soon as the condition of her back permits. The above additional

maintenance payments shall terminate upon death or remarriage or on the WIFE attaining the age of 65 or receiving Social Security Retirement, whichever occurs first.

While perhaps not a model of artful drafting, taken as a whole, and despite the trial court's determination to the contrary, it can only be concluded that section B. is premised on and directed toward Ms. Wickham's under-employment resulting from the condition of her back. Not only does the long and convoluted sentence setting forth the obligation begin with "[i]f by reason of the condition of her back," but the second paragraph of B. begins with exactly the same phrase. The intent evidenced is to obligate the wife to find full-time employment should she lose her job with her husband's company, and to obligate the husband to make additional maintenance payments should the wife not be able to obtain employment because of the condition of her back. The section addresses various possible scenarios, such as Ms. Wickham's total inability to work, being employed part-time or full-time at a job paying less than her previous employment, but all are premised on a back condition interfering with her ability to make a living. Section B. can only be characterized as a "back clause."

■ The parties submit that the task before the trial court and now before this court is the construction of their contract. The general rules of contract construction are familiar. "The cardinal rule in the interpretation of a contract is to determine the intention of the parties and to give effect to that intention." *McNeill v. McNeill*, 708 S.W.2d 751, 753 (Mo.App. 1986), citing *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261 (Mo. banc 1973). Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone; a court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language for there is nothing to construe. *Hathman*, 491 S.W.2d at 264. "In determining whether or not there is such an ambiguity as calls for construction, the whole instrument must be considered." *Id.* Consideration of the Property Settlement Agreement in question, with particular focus on the Maintenance provisions, leads to the conclusion that the parties' intent is sufficiently clear. The court's task, therefore, is more properly characterized as interpretation. *See e.g.* 4 Williston on Contracts § 602 (3d ed. 1961).

As noted previously, where there is no ambiguity in the contract, intent is to be gathered from the contract alone, without resort to construction. Ms. Wickham's testimony that the provision was intended to "guarantee [her] a certain amount of salary ... because he knew [she] was not capable" is not persuasive. While her capability was obviously considered, no guaranteed amount is evident. In the situation of her not being able to work because of her back condition, she agrees to take $250 over the regular $600 maintenance payment. Where she is capable of only part-time work, or full-time work at a position earning less than her previous employment, she is eligible for payments up to $500. Contrary to Ms. Wickham's testimony, this scheme does not guarantee a certain amount of income. The ex-husband's obligation varies depending on the impact of the back condition, which Ms. Wickham testified had been diagnosed prior to the divorce and had not been treated since two or three years before the trial.

■ Finally, Ms. Wickham's reliance on Mr. Wickman's payment to her after she made a demand on him is misplaced. As properly noted by the trial court, the agreement provides that it is not subject to modification, meaning that the demand letter and the subsequent payment did not operate intentionally or unintentionally to alter the terms of the contract.

It is determined the Property Settlement Agreement entered into by the parties evidences an intent to obligate Mr. Wickham to make additional maintenance payments *only* in the case of Ms. Wickham suffering from a back condition. The judgment is reversed and the case is remanded to the trial court to enter judgment in favor of

Mr. Wickham on his Counterclaim for Declaratory Judgment.