480 A.2d 1188

COMMONWEALTH ex rel. Akili S. TAYLOR and Zalika A. Taylor, By and Through their next of friend (sic) their mother, Evonne R. TAYLOR

v.

Anthony W. TAYLOR, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 10, 1984.

Filed July 27, 1984.

Robert E. Hernan, Philadelphia, for appellant.

Frank W. Hayes, West Chester, for appellees.

Before CAVANAUGH, McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from an order which declared appellant-father to be in contempt of a custody order of the Chester County Court of Common Pleas and directed him to return the parties' two children to appellee-mother. Because we

find that the contempt order was erroneously entered, we reverse.

The parties were married in 1969 and parented two children: Akili Sule, born on May 9, 1974, and Zalika Aisha, born on August 9, 1976. The family resided in Chester County, Pennsylvania, until December of 1980, when appellee left the marital home with the children and moved to Newark, Delaware. On May 29, 1981, the parties entered into a separation and property settlement agreement, whereby appellee was to retain custody of the children and appellant received visitation rights. On June 2, 1981, the Chester County Court of Common Pleas granted the parties a divorce and, on June 5, entered a custody order which conformed to the terms of the parties' settlement agreement. In November, 1981, appellant, a citizen of Bermuda, returned to Bermuda while appellee and the children moved from Delaware to Washington, D.C., to live with appellee's parents. In June, 1982, appellee and the children moved to Baltimore, Maryland.

In June, 1982, pursuant to the court-ordered agreement, appellant took the children to his home in Bermuda for the summer. At the end of the summer, however, he failed to return the children to Baltimore. After consultation with various counsel, appellant instituted *ex parte* proceedings in Bermuda to obtain interim custody of the children. On September 3, 1982, the Bermuda Supreme Court granted appellant interim custody. Appellee then filed a summons in Bermuda on November 12, 1982, to have the interim custody order set aside and the children returned to her. Appellant also petitioned the Chester County court on February 2, 1983, to (1) find appellant in contempt, (2) issue a bench warrant for his arrest, and (3) have custody returned to her. Appellant moved to dismiss appellee's petition, claiming that Pennsylvania no longer had jurisdiction over the matter. Following an evidentiary hearing, the lower court, on July 7, 1983, entered an order finding appellant in willful contempt of the Pennsylvania June 5, 1981 custody order and requiring appellant to return custody of the

children to appellee "or be subject to imprisonment in the Chester County Prison for a period not to exceed thirty (30) days or until such time as he purges himself of the contempt by returning the children to their mother and [makes] his application for custody in a court of competent jurisdiction." This appeal followed.[1]

■ Appellant argues first that, because the lower court did not have jurisdiction of the underlying custody matter, the court had no authority to find him in contempt. We disagree. Although it is undisputed that the lower court lost its jurisdiction to *modify* the 1981 custody order under the Uniform Child Custody Jurisdiction Act (UCCJA), 42 Pa.C.S.A. §§ 5341 *et seq.*, we find that it did not, thereby, lose its jurisdiction to *enforce* the prior decree. "There can be no question that courts have the inherent power to enforce compliance with their lawful orders through civil contempt." *Simmons v. Simmons*, 232 Pa. Superior Ct. 365, 369, 335 A.2d 764, 766 (1975); *accord, Brocker v. Brocker*, 429 Pa. 513, 519, 241 A.2d 336, 338 (1968) (courts have inherent power to enforce their orders and decrees). *See generally* 4 McCahey, Kaufman and Kraut, *Child Custody & Visitation Law and Practice* § 25.05 (proceedings to enforce prior custody-visitation directives). We do not believe that the UCCJA has altered this enforcement power. The key provision of the UCCJA expressly applies only to a court's jurisdiction to enter an *initial* custody order or to *modify* an existing custody order:

(a) General rule. —A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination *by initial or modification decree* if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

---

1. The notice of appeal to this Court was filed on July 15, 1983. On August 26, 1983, the Bermuda Supreme Court granted appellant final custody of the children.

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded have found it to be satisfactory for the welfare of the child.

42 Pa.C.S.A. § 5344 (emphasis added). Under § 5344, when appellant commenced the interim custody proceedings in Bermuda in the instant case, Pennsylvania had lost its jurisdiction to modify its prior order: Pennsylvania was no longer the "home state" of the children;[2] neither the chil-

2. "Home state" is defined in 42 Pa.C.S.A. § 5343 as follows:

dren or their parents had any significant contacts with this Commonwealth; and the children were not physically present or abandoned in Pennsylvania.

However, there is a great difference between modification jurisdiction, which involves holding an evidentiary hearing on the best interests of the child in order to determine custody, and enforcement jurisdiction, which is limited to determining whether the prior custody order can be enforced, *i.e.*, whether the decree was valid when entered and never modified. We find support for this distinction in the law of habeas corpus enforcement of custody decrees. In *Adriance v. Adriance*, 329 Pa. Superior Ct. 168, 478 A.2d 16 (1984), the mother challenged the father's custody of their two children by filing a habeas corpus petition in a Pennsylvania court. Because all of the parties had moved out of Pennsylvania since the entry of the initial custody order, the lower court ruled that it could not hold an evidentiary hearing with respect to the best interests of the children because it lacked subject matter jurisdiction under the UCCJA. The court, however, did enforce its prior custody decree granting custody to the father because that decree had been validly entered and never modified. On appeal, this Court affirmed, holding that the lower court correctly determined that it had jurisdiction to enforce its prior custody decree pursuant to the habeas corpus action, even though UCCJA jurisdiction had been lost, and also recommended that modification proceedings be commenced in a state with proper UCCJA jurisdiction. In so holding, we relied on *Wolf v. Weymers*, 285 Pa. Superior Ct. 361, 427 A.2d 678 (1981) (habeas corpus jurisdiction requires presence, residence or domicile of child in state; UCCJA "expand[ed] the number of ways in which the courts of this state will have jurisdiction in a child custody case"), and

... The state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, or in an institution, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

*Brocker v. Brocker, supra. See also* P. Hoff, *Interstate Child Custody Disputes and Parental Kidnapping: Policy, Practice and Law* 8–11 (1982) ("[I]n cases in which a party resorts to habeas corpus to enforce an already existing decree, UCCJA . . . jurisdictional requirements need not be met for the court to grant the requested enforcement remedy."). Therefore, we hold that the lower court retained its enforcement jurisdiction.[3]

■ Appellant argues, alternatively, that the lower court wrongly refused to recognize the jurisdiction of the Bermuda Supreme Court which had granted appellant interim custody. Having found that the lower court retained its enforcement jurisdiction, we must now decide whether the initial custody order rendered in Pennsylvania was validly modified by the Bermuda interim custody order. If it was validly modified, then the courts of this Commonwealth cannot enforce the initial custody order. On the other hand, if it was not validly modified, then we can enforce the initial order. It is undisputed that the June 5, 1981 Pennsylvania order was valid when entered. Therefore, under § 5353 of the UCCJA, that order is binding on the parties "unless and until that determination is modified pursuant to law, including the provisions of this subchapter." 42Pa.C.S.A. § 5354. On September 3, 1982, the Bermuda Supreme Court granted interim custody to appellant. Under §§ 5354 and 5365, this modification order can be recognized and enforced by the courts in this Commonwealth only if Bermuda "assumed jurisdiction under statutory provisions substantially in accordance with this subchapter or [the order] was made under factual circumstances meeting the jurisdictional standards of this subchapter." *See* 42 Pa.C.S.A. §§ 5354 and 5365. In other words, Bermuda must have satisfied one of the jurisdictional criteria outlined in § 5344 at the time it entered its interim custody order. At that time, Bermuda was not a "home state" of the children because they had

3. Under this holding, the courts of this Commonwealth have the power to decide whether or not to enforce the prior custody order, even if the Bermuda court had been correct in assuming jurisdiction.

been in Bermuda only about three months. *See* 42 Pa.C. S.A. § 5344(a)(1). However, no other state qualified as the "home state" either. Appellee had moved with the children to Washington, D.C., in November, 1981, and then to Baltimore, Maryland, in June of 1982. Therefore, the children had not lived in any one place for at least six months immediately preceding the Bermuda custody proceedings. Accordingly, it would seem that Bermuda properly assumed jurisdiction under § 5344(a)(4) (where no other state would have jurisdiction and it is in the child's best interest that the court assume jurisdiction). Another basis for Bermuda's assuming jurisdiction would be § 5344(a)(2) (significant connection with state and substantial evidence available). Although we find the children's "significant connection" with Bermuda—apart from the father's residing there—questionable, there arguably would be available in Bermuda "substantial evidence concerning the present or future care, protection, training and personal relationships of the child[ren]." *See* 42 Pa.C.S.A. § 5344(a)(2). In any event, it is reasonable to conclude that the children's interests were best served by Bermuda's assuming jurisdiction at that time.

Another consideration, relevant to our discussion, is the fact that the children's continued presence in Bermuda resulted from appellant's failure to return them to appellee at the end of the summer in violation of the 1981 custody order. Under § 5349 of the UCCJA, even if Bermuda had modification jurisdiction, it should not have exercised such jurisdiction because appellant improperly retained the children after visitation. *See* 42 Pa.C.S.A. § 5349. The rationale is that the UCCJA seeks to discourage child-snatching and forum-shopping. *Warman v. Warman*, 294 Pa. Superior Ct. 285, 294, 439 A.2d 1203, 1208 (1982). However, § 5349 contains an exception: Despite the parties' wrongful conduct, a court may still assume jurisdiction if "required in the interest of the child[ren]." 42 Pa.C.S.A. § 5349. We believe that that exception applies to the instant case because of the unusual circumstances, *i.e.*, no other forum

would have been more appropriate under the UCCJA. Additionally, the children's initial presence in Bermuda was pursuant to the parties' visitation agreement. Therefore, Bermuda properly assumed jurisdiction under the UCCJA when it entered its interim custody order modifying the initial custody order and the lower court should have recognized it.[4]

Because we find that the 1982 Bermuda interim custody order validly modified the 1981 Pennsylvania custody order, we hold that the lower court wrongly adjudged appellant in contempt.

Accordingly, we reverse the contempt order.

Reversed. Jurisdiction is not retained.

McEWEN, J., concurs in the result.

---

**4.** Because of our disposition of this case, we need not reach appellant's third contention that the lower court failed to comply with the requirements of law before finding appellant in contempt of court.